UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EXIDE TECHNOLOGIES,

        Plaintiff,

vs.
        Case No. 07-CV-11269
        HON. GEORGE CARAM STEEH

KMART CORPORATION,

        Defendant.

_____/

<u>ORDER DENYING EXIDE'S MOTION FOR SUMMARY JUDGMENT (#58)
AND GRANTING, IN PART, KMART'S MOTION FOR SUMMARY JUDGMENT (#57)</u>

Plaintiff Exide Technologies and defendant Kmart Corporation each move for summary judgment of Exide's claims of breach of contract, quantum meruit, account stated, and unjust enrichment, as well as Kmart's counterclaim seeking declaratory relief that Kmart was contractually entitled to receive invoice credits from Exide. A hearing on the cross-motions was held on January 22, 2009.

I.

Exide filed a First Amended Complaint on March 27, 2007 alleging Kmart improperly deducted credits from Exide battery invoices in the amount of $473,840.68. Count I alleges breach of contract. Count II alleges quantum meruit. Count III alleges account stated. Count IV alleges unjust enrichment. Kmart filed a counterclaim on April 25, 2007 seeking declaratory relief that it properly received invoice credits in the amount now claimed by Exide.

The pleadings and record evidence show that Exide was Kmart's "exclusive suppler

for lead-acid batteries" from March 5, 2002 through February 28, 2005 under a written "EXIDE / KMART BATTERY PROGRAM TERM SHEET" ("Agreement").  Under the Agreement, Kmart was "responsible for identifying and segregating store [battery] rotations" of "Automotive, Garden Tractor, [and] Marine Batteries" that were six to nine months old.  For such qualifying batteries that were "rotated" by Kmart back to Exide, Kmart was entitled to receive a credit "equal to acquisition cost set forth on Schedule A attached [to the Agreement] in accordance with Kmart's 620 system."  Batteries older than nine months were considered "junk" batteries for which Kmart was not entitled to receive a credit.

The Agreement continues that "No deductions may be taken by Kmart from invoiced amounts without Exide's prior approval."  The Agreement further reads:

> • The parties hereby agree that the provisions of this Battery Program Term Sheet and in Schedule A attached hereto, and incorporated by reference herein, are the primary terms by which the parties hereto intend to be bound, and they cannot be altered or varied by any other terms or conditions contained in documentation exchanged between the parties hereto; except that, to the extent not inconsistent herewith, the terms and conditions of Kmart's Purchase Order, attached hereto as Exhibit B, will also apply.

In bold letters on the signature page, the Agreement reads: "THE TERMS AND CONDITIONS STATED IN THIS BATTERY PROGRAM TERM SHEET AND IN SCHEDULES A AND B ATTACHED HERETO AND INCORPORATED BY REFERENCE HEREIN, CONSTITUTE A LEGAL AND BINDING AGREEMENT BETWEEN THE PARTIES[.] . . . ."  "<u>SCHEDULE B</u> KMART PURCHASE ORDER TERMS AND CONDITIONS" provides at paragraph 7:

> **Deductions and Set Off.**  Any sums payable to Vendor [Exide] are subject to all claims and defenses of Buyer [Kmart], whether arising from this or any other transaction, and Buyer [Kmart] may set off and deduct against any such sums all present and future indebtedness of Vendor [Exide] to Buyer [Kmart].  Buyer [Kmart] will provide a copy of the deduction voucher(s) for debits taken by Buyer [Kmart] against Vendor's [Exide's] account as a result of any returns

or adjustments. Vendor [Exide] accepts and agrees to each such deduction unless Vendor [Exide], within 90 days after receipt of the deduction voucher, notifies Buyer [Kmart] in writing as to why a deduction should not be made and provides documentation of the reason(s) given. Such written notice must be directed to Buyer's [Kmart's] Vendor Audit Department at the above address. Buyer [Kmart] is not liable for any interest or late charges.

As the Agreement neared its March 2005 end, Exide Credit Analyst Glinda Elder compiled a 123-page computer-generated spreadsheet ("Spreadsheet") identifying in separate data fields: Kmart check numbers and check dates from which Kmart deducted invoice credits for rotated batteries; the amount of each credit taken by Kmart; the Kmart store number from which the batteries were returned; the invoice dates from which credits were taken; and an identifying "error code" assigned by Elder. The fifteen numerical "error codes" and corresponding descriptions as defined by Elder include: "1- No Credit - Junks"; "8 - Need Paperwork"; and "9 - Legal Activity No Support for Deduction." From this Spreadsheet, Elder prepared a March 1, 2005 "Chargeback Debit Invoice" in the amount of $747,249.38, titled "Invalid Rotation Deductions-No Proof of Pick-Up." On March 1, 2005, Exide sent Kmart the Chargeback Debit Invoice, the Spreadsheet, and a letter demanding full payment of the $747,249.38. Exide filed this lawsuit on March 23, 2007.

In practice, Kmart "620 Clerks" identified in "620 Forms" the credit-qualifying batteries to be shipped and rotated back to Exide. Based on these 620 Form inputs, Kmart deducted credits from Exide battery invoices. Exide maintains that deductions could not be changed once the 620 Clerks input the information into Kmart's "620 computer software." According to Kmart, 620 Form inputs were subject to revision until finalized at the end of each day.

Kmart instructed its shipping floor personnel to separate non-credit "junk" batteries from credit-qualifying batteries, and to place the different batteries on separate pallets for

shipment back to Exide. Exide proffers evidence that Kmart shrink-wrapped credit-qualifying and junk batteries together on the same pallet, making it impossible for Exide drivers picking up the batteries to determine whether they were junk or credit-eligible. Kmart proffers evidence that "620 shipping labels" were affixed to the pallets, identifying the credit-eligible batteries.

The record also demonstrates that Exide-authorized drivers completed a "Delivery Exception Report," or "DER," when picking up rotated batteries from Kmart locations. Drivers left copies of completed DERs at the Kmart stores before returning the batteries to Exide. Kmart proffers evidence that the DER noted the number of batteries being returned by Kmart for credit. Once rotated batteries were received by Exide, they were "keyed-in" to Exide's computer system to identify those batteries that did not qualify for invoice credit i.e. batteries that were greater than nine months old. Exide asserts that "[d]uring the initial days of the Battery Program, when an improper deduction was identified by Exide, its Credit Analyst (Glinda Elder) would contact her counterpart at Kmart (Jill Butterfield), and Kmart would repay the improper deduction. However, as the contract expired and was not renewed, Kmart repaid fewer and fewer improper deductions." Exide's October 20, 2008 Motion for Summary Judgment, at 5 (citing Elder's April 23, 2008 deposition testimony, at 9; Butterfield's Supervisor Catherine Jump's April 29, 2008 deposition testimony, at 65-67; and a March 24, 2005 e-mail from Kmart's Steve Partio to Jill Butterfield).

Exide claims damages as of July 8, 2008 of $643,720.15 in credits Kmart allegedly received over the course of the contract for non-qualifying batteries. Exide admits it is not entitled to $107,707.71 for claims dating prior to April 23, 2003, the date Kmart's bankruptcy plan was approved.

II.

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

A.  Breach of Contract

i.

Kmart argues that the Agreement expressly incorporates the Schedule B Purchase Order, which deems Exide's acceptance of Kmart invoice deductions unless Exide notifies Kmart in writing within 90 days after receiving a "deduction voucher" why Exide believes the deduction should not be approved "and provides documentation for the reason(s) given." Kmart asserts that Exide's instant claims are therefore limited to approximately $60,740.00 in invoice deductions taken by Kmart on and after December 1, 2004, being 90 days prior to Kmart's receipt of Exide's March 1, 2005 demand letter and Spreadsheet.

Exide counters that this 90-day limitation period is expressly inapplicable because it is "inconsistent" with that part of the Agreement stating that "[n]o deductions may be taken by Kmart from invoiced amounts without Exide's prior approval." Exide continues that the Kmart Purchase Order term "deduction voucher" is otherwise undefined within the Agreement, and could not reasonably be interpreted to mean a completed 620 Form or DER.

The parties do not dispute that Michigan law is controlling. The court will apply Michigan law. See Wonderland Shopping Center Venture Ltd. Partnership v. CDC Mortgage Capital, Inc., 274 F.3d 1085, 1092 (6th Cir. 2001); Equitable Life Assurance Society of the United States v. Poe, 143 F.3d 1013, 1016 (6th Cir. 1998); Chrysler Corporation v. Skyline Indus. Serv., Inc., 448 Mich. 113, 120, 120 n.14, 125, 528 N.W.2d 698 (1995). In Michigan, as elsewhere, a court's obligation in interpreting a written contract is to discern the contracting parties' intent. Quality Products and Concepts Co. v. Nagel Precision, Inc., 469 Mich. 362, 375, 666 N.W.2d 251 (2003) (citing Sobczak v. Kotwicki, 347 Mich. 242, 249, 79 N.W.2d 471 (1956)). This intent is to be determined in light of the

surrounding circumstances and from a reading of the instrument as a whole. Cleveland v. Detroit Trust Co., 264 Mich. 253, 257, 249 N.W.2d 842 (1933). If the contract language is clear and unambiguous, the contract is construed as a matter of law and enforced as written unless contrary to public policy. Quality Products, 469 Mich. at 375 (citing Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel, 460 Mich. 558, 570, 596 N.W.2d 915 (1999)); Port Huron Ed. Ass'n v. Port Huron Area School Dist., 452 Mich. 309, 323, 550 N.W.2d 228 (1996) (citing Dykema v. Muskegon Piston Ring Co., 348 Mich. 129, 138, 82 N.W.2d 467 (1957)). "Contractual language is construed according to its plain and ordinary meaning, and technical or constrained constructions are to be avoided." UAW-GM Human Resource Center v. KSL Recreation Corp., 228 Mich. App. 486, 491-492, 579 N.W.2d 422 (1998) (quoting Dillon v. DeNooyer Chevrolet Geo, 217 Mich. App. 163, 166, 550 N.W.2d 846 (1996)).

Extrinsic evidence may be used to dispose of a potential contractual ambiguity. Wonderland Shopping Center, 274 F.3d at 1095 (citing Am. Anodco, Inc, v. Reynolds Metals Co., 743 F.2d 417, 422 (6th Cir. 1984)). With respect to a sale of goods in Michigan, the UCC provides:

> (1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.
>
> (2) The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade [M.C.L. § 440.1205].

M.C.L. § 440.2208(1-2). "A course of dealing is a sequence of previous conduct between

the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." M.C.L. § 440.1205(1).

The written Agreement read as whole, expressly incorporating the terms of the Kmart Schedule B Purchase Order, clearly conveys the intent that Kmart was responsible for first identifying and segregating its Exide batteries eligible for invoice credits using the Kmart 620 computer system, that Kmart was required to provide Exide with a "deduction voucher" representing the invoice credits taken against Exide's account as a result of any returned batteries, and that Exide agreed and accepted any such deductions unless Exide notified Kmart in writing within 90 days why Exide believed the deduction should not be made. Quality Products, 469 Mich. at 375; Detroit Trust Co., 264 Mich. at 257. This unambiguous contractual intent is "not inconsistent" with Exide's right of "prior approval" over invoice deductions taken by Kmart. Giving the contract language its plain and ordinary meaning, the Agreement simply provides that Exide's contractual right of prior approval had to be exercised within 90 days after receiving a "deduction voucher" from Kmart, or else the deduction would be deemed approved. Detroit Trust Co., 264 Mich. at 257.

Extrinsic evidence, including the parties' repeated performance of the Agreement, supports the court's interpretation of the written contract. Wonderland Shopping Center, 274 F.3d at 1095; M.C.L. § 440.2208(1). It is beyond dispute that Kmart invoice deductions were first submitted in writing to Exide, and were *thereafter* subject to approval by Exide after Exide reviewed its DERs and its own computer inputs. As conceded by Exide in its brief, "when an improper deduction *was identified by Exide*, its Credit Analyst (Glinda Elder) would contact her counterpart at Kmart (Jill Butterfield), and Kmart would repay the

improper deduction." Exide's October 2008 Motion for Summary Judgment, at 5 (emphasis added). Exide could only identify a deduction as "improper" after Kmart submitted the deduction. Over the course of the contract, Exide processed Kmart invoice deductions without objection to their form. M.C.L. § 440.2208(1). Exide's argument that use of the term "deduction voucher" rendered the language of the Kmart Schedule B Purchase Order ambiguous is not well taken. Exide readily identified Kmart invoice deductions by date and amount in the proffered Spreadsheet. See Exide's Exhibit T.

Kmart's argument that its invoice deductions were "accepted" by Exide when an Exide-driver completed a DER at a Kmart store is not supported by the record. Once again, the parties' course of performance illustrates that Kmart recognized Exide Credit Analyst Elder's right to challenge Kmart invoice deductions well after a DER had been completed and Kmart's ability to modify a System 620 input had expired. Exide input battery numbers into its own computer system for verification after the shrink-wrapped batteries were received from Kmart. Consistent with the language of the Agreement as supported by the extrinsic evidence and parties' course of performance, Exide had 90 days to review the invoice deductions it received from Kmart, and if Exide did not object in writing within those 90 days, the deductions were deemed accepted by Exide. Construing the Agreement as a matter of law, Exide's breach of contract claims are limited to Kmart invoice deductions received by Exide on or after December 1, 2004[1] as identified in writing

---

[1] The court need not reach the argument advanced by Kmart that Exide is equitably estopped by the "mend the mold doctrine," or otherwise, from denying its acceptance of Kmart invoice credit deductions submitted before December 1, 2004. The issue is controlled by contract law. Exide is not equitably estopped from demonstrating that, consistent with the Agreement's 90 day acceptance period and the submission of its March 1, 2005 letter and Spreadsheet to Kmart, Exide did not accept the invoice deductions submitted by Kmart on or after December 1, 2004.

by Exide in the March 1, 2005 Spreadsheet. Quality Products, 469 Mich. at 375. Kmart's motion for summary judgment will be granted, in part, to the extent Exide alleges Kmart committed a breach of contract prior to December 1, 2004. Amway Distributors, 323 F.3d at 390.

ii.

Kmart argues that Exide's written documentation for challenging $60,740.53 in invoice deductions submitted by Kmart on and after December 1, 2004 supports, at best, only $41,606.81 in damages. Exide responds that Kmart destroyed Kmart's copies of the 620 Forms and DERs, and therefore Exide is entitled to an evidentiary presumption that it could support all of its claims, shifting the burden upon Kmart to prove that its invoice deductions were valid.

As the party alleging the breach of contract claim, Exide bears the burden of proving it suffered damages as the result of Kmart's breach of contract. Alan Custom Homes, Inc. v. Krol, 256 Mich. App. 505, 512, 667 N.W.2d 379 (2003).

> [I]n a case involving the failure of a party to preserve evidence, a trial court properly exercises its discretion when it carefully fashions a sanction that denies the party the fruits of the party's misconduct, but that does not interfere with the party's right to produce other relevant evidence. An appropriate sanction may be the exclusion of evidence that unfairly prejudices the other party or an instruction to the jury that it may draw an inference adverse to the culpable party from the absence of the evidence.

MASB-SEG Property/Casualty Pool, Inc. v. Metalux, 231 Mich. App. 393, 400, 586 N.W.2d 549 (1998) (quoting Brenner v. Kolk, 226 Mich. App. 149, 161, 573 N.W.2d 65 (1998)). The appropriateness of a particular sanction lies within the trial court's discretion. Id. at 401.

Exide at one time possessed both its DERs and copies of Kmart's invoice

10

deductions.  Under the parties' contract, Exide bears the burden of producing timely "documentation of the reason(s) given" by Exide why an invoice deduction should not be made.  Exide Credit Analyst Elder retained enough information to identify Kmart check numbers and dates from which invoice deductions were taken, the amount of each credit taken, and an identifying "error code" giving a reason why the deduction should not have been approved.  See Exide's Exhibit T. Exide had its own computer system for cross-checking Kmart's invoice deductions.  Under the totality of the circumstances, it would be inappropriate to shift the burden of proof to defendant Kmart to *disprove* Exide's breach of contract claims because Kmart did not save copies of its 620 Forms.  Alan Custom Homes, Inc. v. Krol, 256 Mich. App. at 512; Metalux, 231 Mich. App. at 400.

Construing the pleadings and evidence in a light most favorable to Exide, a genuine factual dispute remains regarding the amount of damages, if any, suffered by Exide as the result of alleged breaches of contract committed by Kmart on and after December 1, 2004, and as identified in Exide's March 1, 2005 Spreadsheet.  Kmart's and Exide's motions for summary judgment as to these breach of contract claims will be denied.  Amway Distributors, 323 F.3d at 390.

B.  Quantum Meruit and Unjust Enrichment

"The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment."  Morris Pumps v. Centerline Piping, Inc., 273 Mich. App. 187, 194, 729 N.W.2d 898 (2007).  "However, a contract will be implied only if there is no express contract covering the same subject matter."  Id. (quoting Belle Isle Grille Corp. v. Detroit, 256 Mich. App. 463, 478, 666 N.W.2d 271 (2003)).  "Generally, an implied contract may not be found if there is an express contract between the same parties on the

same subject matter." Id. (quoting 42 CJS Implied and Constructive Contracts, § 34, p. 33) (emphasis omitted). Exide's claims of quantum meruit and unjust enrichment seek recovery on the same subject matter as the parties' express Agreement. Accordingly, Kmart is entitled to summary judgment of Exide's quantum meruit and unjust enrichment claims as a matter of law. Morris Pumps, 273 Mich. App. at 193-94; Amway Distributors, 323 F.3d at 390.

## C. Account Stated

"The conversion of an open account into an account stated, is an operation by which the parties assent to a sum as the correct balance due from one to the other[.]" Kaunitz v. Wheeler, 344 Mich. 181, 185, 73 N.W.2d 263 (1955). "[W]here a plaintiff is able to show that the mutual dealings which have occurred between two parties have been adjusted, settled, and a balance struck, the law implies a promise to pay that balance." Keywell and Rosenfeld v. Bithell, 254 Mich. App. 300, 331, 657 N.W.2d 759 (2003) (quoting Watkins v. Ford, 69 Mich. 357, 361, 37 N.W. 300 (1888)). A prima facie account stated claim may be established by: (1) serving the defendant with an affidavit of the amount due pursuant to M.C.L. § 600.2145, accompanied by proof that the defendant failed to file a counter-affidavit denying the debt; or (2) "through evidence of an express understanding, or words and acts, and the necessary and proper inferences thereon." Klochko Equipment Rental Co., Inc. v. Village Green Construction, L.L.C., No. 235599, 2003 WL 21398305, at * 3 (Mich. Ct. App. June 17, 2003) (citing Keywell, 254 Mich. App. at 331).

Exide did not serve Kmart with a statutory affidavit pursuant to M.C.L. § 600.2145. Exide has not come forward with evidence that would allow a reasonable jury to find or infer that Kmart ever agreed with Exide that Kmart owed $747,249.38 as set forth in the March

1, 2005 Chargeback Debit Invoice and Spreadsheet, or $473,840.68 as alleged in the First Amended Complaint. Exide provided Kmart with the Chargeback Debit Invoice and Spreadsheet one day after the Agreement ended on February 28, 2005. These circumstances are unlike those in Wilson v. White, 223 Mich. 497, 500, 509-10, 194 N.W. 593 (1923), where the defendants failed to object to the plaintiffs' billing practices over the course of a 15-year business relationship, and objected only to the accounting methods after the plaintiffs filed a lawsuit. Kmart's failure to "object" to the March 1, 2005 Chargeback Debit Invoice before Exide filed suit on March 23, 2007 does not support a finding that Kmart agreed with Exide that the alleged debt was the correct amount due. Kmart is entitled to summary judgment of Exide's account stated claim as a matter of law. Amway Distributors, 323 F.3d at 390.

### D. Kmart's Counterclaim

Kmart's counterclaim seeks a declaration that Kmart was entitled to receive credits or deductions under the Agreement "at least in an amount of $473,840.68, or such other amount as may be proven at trial." The counterclaim is moot to the extent Exide seeks to recover invoice credit deductions taken by Kmart prior to December 1, 2004. Whether Kmart was contractually entitled to the invoice credit deductions it took on or after December 1, 2004 remains at issue. The parties cross-motions for summary judgment of Kmart's counterclaim will be denied.

### III.

Exide's motion for summary judgment is hereby DENIED. Kmart's motion for summary judgment is hereby GRANTED, IN PART, as to Exide's claims of quantum meruit, account stated, and unjust enrichment, and to the extent Exide alleges Kmart committed

a breach of contract prior to December 1, 2004. Exide's claims of quantum meruit as alleged in Count II, account stated as alleged in Count III, and unjust enrichment as alleged in Count IV are hereby DISMISSED with prejudice. Exide breach of contract claim as alleged in Count I is hereby DISMISSED with prejudice, but ONLY to the extent Exide alleges Kmart committed a breach of contract prior to December 1, 2004. Exide's breach of contract claims remain viable ONLY to the extent Exide alleges Kmart committed a breach of contract on or after December 1, 2004. Kmart's counterclaim seeking declaratory relief is hereby DISMISSED as MOOT to the extent Kmart seeks a declaration that it was entitled to invoice credit deductions it took prior to December 1, 2004. Consistent with the reasoning set forth herein, this matter will proceed on Exide's remaining claim that Kmart breached the Agreement on or after December 1, 2004.

    SO ORDERED.

Dated: May 20, 2009

                                    s/George Caram Steeh
                                    GEORGE CARAM STEEH
                                    UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 20, 2009, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk